UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY ALLEN EARLEY,<br><br>                         Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC, a<br>Delaware Limited Liability<br>Company; DOES 1 through 10,<br>inclusive,<br><br>                      Defendants. | Case No.:  23-cv-2359-WQH-DEB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim ("Motion to Dismiss") (ECF No. 5) filed by Defendant General Motors LLC ("Defendant" or "General Motors").

## I.    BACKGROUND

On November 21, 2023, Plaintiff initiated this action by filing a Complaint in the Superior Court of California, County of San Diego, Case No. 87-2023-00050823-GU-BC-CTL. (ECF No. 1-2, Compl.)

On December 28, 2023, Defendant removed the action to this Court on the basis that the Court has diversity jurisdiction over this dispute. (ECF No. 1, NOR.)

1

On January 1, 2024, Defendant filed the Motion to Dismiss. (ECF No. 5.) On January 16, 2024, Plaintiff filed a Response in opposition to the Motion to Dismiss. (ECF No. 6.) On January 18, 2024, Defendant filed a Reply in support of the Motion to Dismiss. (ECF No. 7.)

## II.   ALLEGATIONS IN THE COMPLAINT

In October 2015, Defendant "announced [a] partnership with LG to produce the Chevrolet Bolt and touted the vehicle as an affordable, long range vehicle." (Compl. ¶ 14.) In a January 2016 press release, Defendant "said the Bolt will have a battery range over 200 miles because of the use of a battery with improved thermal operating performance." *Id.* ¶ 15. "The mileage representation was made absent any reference to the EPA estimated mileage range." *Id.* In December 2016, Defendant "first became aware of issues with the battery in the Bolt." *Id.* ¶ 16. "As a result of issues with the battery and energy management related issues, General Motors instituted a Bolt EV High Voltage Battery Exchange and Internal Parts Process to replace defective batteries." *Id.* Despite this knowledge, Defendant started to run commercials in January 2017 that featured the Bolt's battery range, marketing the Bolt as a "'long range' and 'affordable' vehicle." *Id.* ¶ 17.

"In October 2017, [National Highway Safety Administration ('NHTSA')] published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition." *Id.* ¶ 18.

In November 2017, Defendant created a Bolt repair program "in response to findings of issues with low voltage in the batteries." *Id.* ¶ 19.

In April 2018, Defendant "created another program to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion." *Id.* ¶ 20. In May 2018, Defendant "again notified its dealers regarding issues with the batteries in the Bolt." *Id.* ¶ 21.

In August 2018, Defendant created another program regarding the battery's software and ability to monitor the battery's charge.

In March 2019, Defendant "became aware of the first battery fire involving the Chevrolet Bolt." *Id.* ¶ 23.

"Despite the foregoing, in October 2019, General Motors made Adam Piper, a GENERAL MOTORS employee and Bolt battery expert, available to answer questions regarding the Chevy Bolt." *Id.* ¶ 24. "Mr. Piper, on behalf of [and as authorized to speak on behalf of] GENERAL MOTORS, stated: 'We engineered the battery system so that you can charge to 100% and maximize range. Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%.'" *Id.* This statement was made despite Defendant's knowledge of the fire risk when fully charging the battery.

By August 2020, Defendant was aware of at least 12 fires that involved the Chevrolet Bolt.

In October 2020, the NHTSA "opened an investigation into the Chevrolet Bolt." *Id.* ¶ 27.

On May 14, 2021, Plaintiff acquired a 2021 Chevrolet Bolt, VIN Number 1G1FZ6501M4114743 (the "Subject Vehicle") from an authorized dealer and agent of Defendant. As part of the transaction, Defendant issued express warranties that the Subject Vehicle "would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the SUBJECT VEHICLE had defects, GENERAL MOTORS would repair the defects" and an 8-year, 100,000-mile warranty for the vehicle's battery. *Id.* ¶ 7. "[A]t no time prior to the sale of the subject vehicle did General Motors disclose the battery issues to Plaintiff or alter its marketing campaign with respect to the subject vehicle." *Id.* ¶ 23. "At the time of Plaintiff's acquisition of the vehicle, GENERAL MOTORS[] advertised the subject vehicle as a long range, affordable electric vehicle on its website." *Id.* ¶ 26. "[A]t the time of acquisition, GENERAL MOTORS[] dealership personnel assured Plaintiff of the long-range and safe nature of the vehicle." *Id.* In the 2020 Chevy Bolt marketing materials, Defendant "pictured the vehicle [as] being safe and capable of being charged indoors in Plaintiff's garage." *Id.* ¶ 29. "These materials

1  were prepared on behalf of GENERAL MOTORS and were justifiably reviewed and relied
2  upon by Plaintiff prior to sale." *Id.*

3        Plaintiff notified Defendant's authorized service and repair facilities, within a
4  reasonable time after Plaintiff's discovery, when the Subject Vehicle "exhibited defects,
5  non- conformities, misadjustments, or malfunctions." *Id.* ¶ 10. On each notified occasion,
6  Plaintiff "attempted to invoke the applicable warranties, demanding that the authorized
7  repair facilities repair such nonconformities pursuant to the warranties." *Id.* "Defendant
8  failed to make the SUBJECT VEHICLE conform to the applicable warranties, despite a
9  reasonable amount of time and a reasonable number of attempts to do so." *Id.* ¶ 11. Plaintiff
10  discovered that Defendant "was unable or unwilling to make the SUBJECT VEHICLE
11  conform to the applicable warranties." *Id.* ¶ 12. Defendant "falsely represented that the
12  subject vehicle is safe and functional for normal use." *Id.* ¶ 13. The Subject Vehicle,
13  however, "is not safe or functional because the batteries may ignite when they are either
14  fully charged or fall below seventy (70) miles remaining mileage" and "cannot be parked
15  inside overnight due to fire risk." *Id.*

16        "In 2021, Defendant GENERAL MOTORS issued a recall notice for the subject
17  vehicle, stating that its batteries may ignite when nearing a full charge." *Id.* ¶ 30. Defendant
18  "warned Plaintiff that the vehicle's charge should not exceed 90%, the battery mileage
19  should not fall below seventy (70) miles remaining, and the vehicle should not be parked
20  indoors overnight." *Id.*

21        The battery defect poses a significant safety risk to Plaintiff. "Plaintiff has suffered
22  injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading
23  practices set forth herein. The injury is in the form of anxiety, fear and emotional distress."
24  *Id.* ¶ 32.

25        Defendant "falsely represents the safety of the vehicle as well as the expected battery
26  usage and mileage capacity of the vehicle." *Id.* ¶ 40. "The marketing material for the
27  vehicle leads the reasonable consumer to believe they were purchasing an environmentally
28  friendly vehicle that functions as a long-range vehicle, when, in reality they cannot charge

the vehicles to their full battery capacity or drive the vehicle for long distances due to fear of falling below seventy (70) miles remaining on a single charge." *Id.* ¶ 40. Defendant "willfully, falsely, and knowingly marketed the subject vehicle as having long range capability." *Id.* ¶ 80. The marketing was made on Defendant's website, among other places. "The statements in the marketing were echoed by [Defendant's] dealership personnel at the time of sale who assured Plaintiff that the vehicle had a long-range and was safe." *Id.* Through the deceptive marketing, "Defendant communicated to Plaintiff that the vehicle was, among other things, environmentally friendly, safe and capable of long-range use." *Id.* This was a material fact because vehicle range is essential to a consumer's decision-making process in purchasing an electric vehicle. "Defendant's representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle." *Id.* ¶ 81. Defendant knew its representations were false and intended for Plaintiff to rely on them. Plaintiff decided to purchase the Subject Vehicle based, in part, on the false and misleading representations.

Defendant also marketed the vehicle as capable of long-range use, which was another centerpiece of Defendant's marketing efforts. "Through dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues, Defendant pervasively and consistently represented that the vehicle had the best-in-class battery economy and touted its specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe." *Id.* ¶ 85. Defendant concealed and suppressed the facts that the vehicle was not able to achieve its expected range and there were safety issues resulting from the battery's overheating. Defendant concealed from Plaintiff that he would only be able to charge the Subject Vehicle to 90% and use the Subject Vehicle if he did not exceed 70 miles remaining. Plaintiff could not reasonably discover this defect, which Defendant and its dealers had exclusive and superior possession, through due diligence.

1    Defendant's use of a defective battery in the Subject Vehicle causes injuries to
2    Plaintiff, who cannot park the vehicle in a manner aligning with Plaintiff's reasonable
3    expectations, has a vehicle of quality less than Plaintiff's expectations, and cannot avoid
4    the injuries the defective battery causes.

5    Plaintiff now brings the following five claims against Defendant: (1) violation of the
6    Song-Beverly Act – breach of express warranty, (2) violation of the Song-Beverly Act –
7    breach of implied warranty, (3) violation of the Song-Beverly Act – Section 1793.2,
8    (4) Fraud, and (5) violation of California Business & Professions Code Section 17200
9    ("UCL").

10   Plaintiff seeks damages, recission of the purchase contract, restitution, civil
11   penalties, disgorgement, prejudgment interest, attorney's fees and costs, and other such
12   relief as the Court deems just and proper.

13   **III.   LEGAL STANDARD**

14   Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure
15   to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state
16   a claim for relief, a pleading "must contain ... a short and plain statement of the claim
17   showing that the pleader is entitled to relief." *Id.* 8(a)(2). Dismissal under Rule 12(b)(6) "is
18   proper only where there is no cognizable legal theory or an absence of sufficient facts
19   alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs.,*
20   *Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

21   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
22   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
23   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
24   "A claim has facial plausibility when the plaintiff pleads factual content that allows the
25   court to draw the reasonable inference that the defendant is liable for the misconduct
26   alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds'
27   of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic
28   recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

(alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

## IV.   DISCUSSION

Defendant moves to dismiss Plaintiff's fourth cause of action, which alleges fraud, and fifth cause of action, which alleges a violation of the UCL.

### A.   Fraud Claim

Plaintiff's fourth cause of action is based on two theories of fraud: fraudulent misrepresentation and fraudulent concealment. (*See* Compl. ¶¶ 80–93.)

#### 1.   Fraudulent Misrepresentation

Defendant contends that Plaintiff does not plead with particularity each element of the fraudulent misrepresentation claim. Defendant contends that Plaintiff fails to allege facts to show Defendant's knowledge at or before the time of purchase. Defendant contends that Plaintiff's fraudulent misrepresentation claim is based on unactionable EPA mileage range estimates.

To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) knowledge that the representation was false; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Agosta v. Astor*, 120 Cal. App. 4th 596, 599, 603 (Ct. App. 2004). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the claimant allege "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMP LLP*, 476 F.3d 756, 764 (9th Cir. 2006) (citing

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 947 (S.D. Cal. 2020) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (Ct. App. 1991)).

Here, Plaintiff alleges the following facts: "In a press release in January 2016, General Motors said the Bolt will have a battery range over 200 miles because of the use of a battery with improved thermal operating performance"; Defendant first became aware of the Bolt's battery issues in December 2016; Defendant ran commercials starting in January 2017 featuring the Bolt's battery range, marketing it as a "long range" and "affordable" vehicle; Defendant created several repair programs related to the Bolt's batteries; Defendant notified its dealers of the battery issues; in October 2019, Defendant made Adam Piper Defendant's employee who was available to answer questions on behalf of Defendant and made a statement about the battery system being able to charge to 100% and maximize range; at the time when Plaintiff acquired the Subject Vehicle, Defendant advertised the vehicle as a "long range, affordable electric vehicle on its website" and Defendant's "dealership personnel assured Plaintiff of the long-range and safe nature of the vehicle"; and the 2020 Chevy Bolt marketing materials "pictured the vehicle [as] being safe and capable of being charged indoors in Plaintiff's garage" and Plaintiff reviewed and relied on these materials. (Compl. ¶¶ 15–17, 19–22, 24, 26, 29, 80.) Plaintiff alleges that Defendant's misrepresentations were false because the Subject Vehicle contained a lithium-ion battery that causes the vehicle to overheat when used for long periods of time, Defendant knew the misrepresentations were false, and Defendant intended for Plaintiff to rely on them. *Id.* ¶¶ 81–82.

Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the Complaint fails to allege facts with the requisite particularity to support a claim for fraud based on a theory of fraudulent misrepresentation. Importantly, Plaintiff fails to

allege "who made the allegedly false representations to" Plaintiff and that Plaintiff heard and relied on these false misrepresentations. *Tarmann*, 2 Cal. App. 4th at 158. While Plaintiff alleges that Mr. Piper, on behalf of Defendant, made a statement regarding the vehicle's battery, Plaintiff does not adequately allege "to whom [Mr. Piper] spoke," "when it was said or written," or that Plaintiff heard and relied on this particular misrepresentation. *Id.* at 157. Plaintiff fails to adequately allege a fraud claim under a theory of fraudulent misrepresentation.

### 2.     Fraudulent Concealment

Defendant contends that Plaintiff's fraud claim allegations do not meet the particularity requirement under Rule 9(b). Defendant contends that Plaintiff's fraudulent concealment claim is barred by the economic loss rule because Plaintiff only seeks economic damages as a result of purchasing the Subject Vehicle, including that Plaintiff would not have purchased the Subject Vehicle and has only suffered fear and anxiety. Defendant contends that Plaintiff's fraudulent concealment claim fails because Plaintiff fails to allege a relationship between the parties giving rise to a duty to disclose. Defendant contends that the Complaint does not allege that Plaintiff purchased the Subject Vehicle from Defendant and purchased it from an authorized third-party dealership. Defendant contends that Plaintiff's allegations of purchasing express warranties does not establish a transactional relationship with Plaintiff because she purchased the express warranties from the third-party dealership and Plaintiff does not have a direct transactional relationship with Defendant.

Plaintiff contends that Defendant and Plaintiff entered into a contract—the warranty agreement—that created a transactional relationship between the parties. Plaintiff contends that "Plaintiff[] purchased the vehicle from a General Motors dealership, General Motors backed the purchase with an express warranty and General Motors' authorized dealerships are its agents for purposes of the sale of General Motors vehicles to customers." (ECF No. 6 at 7.)

23-cv-2359-WQH-DEB

"[T]he elements of a cause of action for fraud based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (Ct. App. 2009) (quotations and citations omitted). "A duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty" or a "transactional relationship," "such as seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 331 (Ct. App. 2017) (quotations and citations omitted). "Such a transaction must necessarily arise from direct dealings between the plaintiff and the defendant; it cannot arise between the defendant and the public at large." *Id.* at 312.

Some district courts within the Ninth Circuit apply "a relaxed Rule 9(b) standard where the claim rests on an alleged fraudulent concealment because, when the fraud is conducted by concealment, the plaintiff is inherently less able to plead the specific time, place, or content of the omission relative to an active misrepresentation." *Poston v. Gen. Motors, LLC*, No. 24-cv-0082-BAS-JLB, 2024 WL 3558377, at *5 (S.D. Cal. July 22, 2024) (citing *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1107; *Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011)). Nevertheless, the "relaxed" standard "does not eliminate Rule 9(b)'s requirements that the plaintiff plead with particularity all other elements of his claim." *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)). In particular, a plaintiff "must point to specific affirmative acts [d]efendants took 'in hiding, concealing[,] or covering up the matters complained of.'" *Id.* (quoting *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022)).

Here, Plaintiff alleges that Defendant concealed a material fact and Plaintiff would not have purchased or would have paid less for the Subject Vehicle had she known the concealed fact. (*See* Compl. ¶ 81 ("[T]he vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle."), ¶ 86 ("Defendant concealed and suppressed the fact that the vehicle could not achieve its expected range and safety due to the overheating battery."), ¶ 92 ("[Plaintiff] would not have purchased the vehicle or would have paid significantly less for the vehicle.").) Plaintiff alleges that she purchased the Subject Vehicle from a General Motors authorized dealer and agent, and Defendant "issued an express warranty which would only be issued by GENERAL MOTORS as a result of the sale of the vehicle." *Id.* ¶ 6; *see also id.* ("The dealership is an agent of GENERAL MOTORS for purpose of the transaction."), ¶ 89 ("Defendant had a duty to disclose that the battery in the vehicle is unsafe at the point of purchase because (1) Defendant had exclusive knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range, battery safety, and performance of the vehicle that were misleading without disclosure o[f] the fact that the vehicle contained unsafe batteries that caused the vehicle to overheat and pose a risk of fire.").

The Complaint fails to allege Plaintiff's fraudulent concealment claim with the requisite particularity because it does not sufficiently specify the "who," "what," "when," and "where" of Defendant's alleged fraudulent concealment. *See Poston*, 2024 WL 3558377, at *5. The Complaint conclusorily alleges that "Defendant took affirmative actions to conceal the material facts." (Compl. ¶ 89.) The Complaint does not, however, allege with particularity the specific affirmative acts that Defendant took to conceal the alleged issues with the Subject Vehicle's battery. *See Poston*, 2024 WL 3558377, at *5 (dismissing the plaintiff's fraudulent concealment claim where the plaintiff failed to "point[] to any specific acts [the defendant] took"); *Hornby v. Gen. Motors, LLC*, No. 3:24-cv-00079-JAH-VET, 2024 WL 3907050, at *4 (S.D. Cal. Aug. 22, 2024) (same); *Herron*

*v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D Cal. 2013) (concluding that the plaintiff's "conclusory assertion that Defendants 'actively concealed material facts from Plaintiff and the Class'" was "deficient" because it "fail[ed] to allege any specific facts demonstrating that … [Defendants] *actively* tried to conceal the existence of the [material facts]"). The Complaint thus fails to plead Plaintiff's fraudulent concealment claim with the particularity required under Rule 9(b). Defendant's Motion to Dismiss the fraud claim under a theory of fraudulent concealment is granted.[1]

### B.   UCL Claim

Plaintiff brings a claim for violation of the UCL based on the "unfair," "fraudulent," and "unlawful" prongs.

Defendant contends that Plaintiff's UCL claim should be dismissed based on the unlawful prong because Plaintiff fails to identify an underlying statute. Defendant contends that Plaintiff's UCL claim should be dismissed based on the fraudulent prong for failure to allege fraud with particularity. (ECF No. 5 at 22 n.2.) Defendant contends that Plaintiff's UCL claim should be dismissed based on the unfair prong because Plaintiff fails to "reference any established public policy that [General Motors'] actions have violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous." *Id.* at 23–24.

California's UCL prohibits "any unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. Code §§ 17200, 17203. "Because the statute is written in the disjunctive, it is violated if a defendant violates any of the unlawful, unfair or fraudulent prongs." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012)).

As the Court finds above, the Complaint fails to identify false and misleading representations made by Defendant and allegations to support a fraud claim sufficient to

---

[1] Because the Court concludes that Plaintiff has not alleged his fraudulent concealment claim with the requisite particularity, the Court does not reach Defendant's alternative arguments that Plaintiff fails to allege a transactional relationship or that the economic loss rule bars Plaintiff's fraudulent concealment claim.

satisfy the heightened pleading requirement. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim."). Accordingly, the Court finds that the Complaint does not adequately state a UCL claim under the "fraudulent" prong or under any prong for misleading and false representations.[2]

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices" that are "independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "[V]irtually any state, federal, or local law can serve as the predicate." *Friedman*, 855 F.3d at 1052.

Here, with respect to the "unlawful" prong, the Complaint does not allege a violation of a specific statute. To the extent Plaintiff intended to bring the UCL claim based upon a violation of the Song-Beverly Act, the Complaint does not allege facts sufficient for the Court to make this inference. Moreover, the allegations pertaining to the unlawful prong sound in fraud, and the Court finds above that Plaintiff has not adequately alleged an underlying claim for fraud. (*See, e.g.*, Compl. ¶ 122 ("Defendant's use of a defective battery, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct."), ¶ 124 ("As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.").) Accordingly, Plaintiff does not adequately plead a violation of a predicate law and does not state a claim for relief under the "unlawful" prong.

---

[2] The Complaint appears to allege Plaintiff's UCL claim under the "fraudulent" prong solely with regard to Defendant's alleged fraudulent misrepresentations. (*See* Compl. ¶ 117 ("As alleged herein, the *misrepresentations* by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200." (emphasis added)).) Nevertheless, to the extent Plaintiff also intends to base his UCL claim on Defendant's alleged fraudulent concealment, the Complaint similarly fails to state this predicate act with particularity.

1
2
3

The "unfair" prong of the UCL prohibits "practice[s] [that] may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns*, 20 Cal. 4th at 180.

4
5
6
7
8

> Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.

9
10
11
12

*Doe v. CVS Pharm, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020). Determining whether a defendant's conduct was unfair "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Friedman*, 855 F.3d at 1055 (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Plaintiff alleges that Defendant's use of the defective battery in the vehicle did not confer a benefit to Plaintiff, causes injuries to consumers and Plaintiff who cannot use or park the vehicles as reasonably expected, and causes injuries to Plaintiff who overpaid for the vehicle and received a vehicle of lesser quality than expected. (*See* Compl. ¶¶ 99–102.) Plaintiff alleges that Defendant's use of the battery in the vehicle is outweighed by the injuries the battery causes. Plaintiff alleges that "Defendant's conduct of using the defective battery in the vehicle has no utility and financially harms purchasers" and "the utility of Defendant's conduct is vastly outweighed by the gravity of harm." *Id.* ¶ 105. Plaintiff appears to bring the UCL claim under the "unfair" prong based on the "balancing" test, i.e., "whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe*, 982 F.3d at 1215. Viewing the allegations in the light most favorable to Plaintiff, the Complaint adequately alleges that the alleged injuries from Defendant's use of the battery outweigh Defendant's "reasons, justifications and motives" for selling a faulty vehicle. *Id.* The Court finds that this is not one of the "rare situations" in which resolution of whether Defendant's conduct was unfair is appropriate

on a motion to dismiss. *Friedman*, 855 F.3d at 1055. Plaintiff sufficiently alleges a cause of action under the unfairness prong of the UCL.

Defendant's Motion to Dismiss the UCL claim based on the unfair prong is denied.

## V.     CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 5) is granted in part and denied in part.[3] Defendant's Motion is granted as to Plaintiff's fourth cause of action under the theories of fraudulent misrepresentation and fraudulent concealment. Defendant's Motion is also granted as to Plaintiff's fifth cause of action under the "fraudulent" and "unlawful" prongs of the UCL. Defendant's Motion is denied as to Plaintiff's fifth cause of action under the unfairness prong of the UCL. Plaintiff may file an amended complaint, entitled "First Amended Complaint," within fourteen (14) days of the entry of this Order. If no amended complaint is filed within fourteen (14) days, Defendant must file an answer within twenty-one (21) days of the entry of this Order.

Dated:  September 17, 2024

Hon. William Q. Hayes
United States District Court

---

[3] Defendant's request for judicial notice of the estimated mileage range for Chevrolet Bolt model years 2020–2022 (ECF No. 5-2) is denied as the Court need not consider this fact in ruling on the Motion to Dismiss. *See Avesta v. Petroutas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

23-cv-2359-WQH-DEB